FILED
United States Court of Appeals
Tenth Circuit

December 29, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RON FENN,

        Plaintiff - Appellant,

v.

CITY OF TRUTH OR
CONSEQUENCES; MICHAEL
APODACA, Truth or Consequences
Police Captain, individually acting
under the color of law; LEE ALIREZ,
Truth or Consequences Police Chief,
individually acting under color of state
law; DANIEL HICKS, Director of
Spaceport America,

        Defendants - Appellees.

No. 19-2201

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:18-CV-00634-WJ-GBW)**

---

A. Blair Dunn, Western Agriculture, Resource an Business Advocates, LLP,
Albuquerque, New Mexico, for Appellant.

Matthew Zidovsky (Michael R. Heitz with him on the brief), Montgomery &
Andrews, P.A., Santa Fe, New Mexico, for Appellee Daniel Hicks.

Mark Standridge (Cody R. Rogers with him on the brief), Jarmie & Rogers, P.C.,
Las Cruces, New Mexico, for Appellees City of Truth or Consequences, Chief
Lee Alirez, and Captain Michael Apodaca.

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **BACHARACH**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

The City of Truth or Consequences converted a community center for senior citizens into a visitor center operated by Spaceport America. Seeking leadership in the emerging space industry, New Mexico created Spaceport as a public agency to attract investment in a planned space launch facility near Truth or Consequences. The facility, the Lee Belle Johnson Center, contained not only Spaceport, but other tenants, including Geronimo Trail Scenic Byway and Follow the Sun Tours.

A local resident, Ron Fenn, was unhappy with this change, and beginning in 2015 he publicly protested his opposition over a period of several years. Some of his protests were inside the building and included offensive behavior and unauthorized uses of the facility. Several tenants in the building, including Spaceport Director Daniel Hicks, complained to local law enforcement about Fenn's behavior and presence at the Center. He was issued three no trespass notices pursuant to New Mexico law over that time. Finally, in June 2017, Fenn was arrested and charged with trespass. The charges were later dismissed.

Fenn sued, asserting (1) a 42 U.S.C. § 1983 civil rights claim for First Amendment retaliation against Hicks, arresting officer Michael Apodaca, and Police Chief Lee Alirez; (2) a § 1983 claim for malicious prosecution against Apodaca and Alirez; (3) claims against Truth or Consequences for supervisory liability and under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (4) a § 1983 claim for supervisory liability against Alirez; and (5) a state law claim for malicious abuse of process against Apodaca and Alirez.

The district court rejected Fenn's claims on qualified immunity grounds, and we affirm. The individual defendants are entitled to qualified immunity because no constitutional violation occurred. And, in the absence of a constitutional violation by Apodaca or Alirez, there is no basis for the *Monell* and supervisory claims. Finally, the district court correctly dismissed Fenn's state law claim for malicious abuse of process.

## I. Background

As the district court noted, Fenn has "a lengthy history of being asked to leave the Lee Belle Johnson Center." App. at 112. In June 2015, a tenant at the Center asked police to ban Fenn from the premises because he was offensive and made her feel unsafe. Another tenant reported to the police that Fenn was improperly soliciting business at the Center and requested he be banned from the Center. Police were told by witnesses that while at the Center, Fenn handed out a

business card that read, "Spaceport Tour Video Memory Services," and asked for donations in connection with his video services.

Apodaca and Alirez subsequently served no-trespass notices on Fenn as a result of the tenants' requests. Fenn was later prosecuted for conducting business without a license and convicted on September 9, 2015.

Approximately a year later, someone contacted the police department and reported Fenn had entered the Center and was making "obnoxious comments." Apodaca reported to the Center and was informed Fenn had been "carrying on" about how the building was no longer being used as a senior center. Apodaca took no action against Fenn.

Apodaca responded to another call from the Center in May 2017. Witnesses reported Fenn had been on the premises yet again and was putting up posters. One tenant expressed concern that expensive items kept in the Center could be damaged or stolen, and another notified the officer she was interested in pursuing a no-trespass notice against Fenn to prevent him from returning. Around the same time, Hicks also requested such a notice on behalf of Spaceport—the first such request made by Spaceport. After collecting Hicks' complaint, Alirez served the new no-trespass notice on Fenn.

On June 4, 2017, someone at the Center again contacted the police to report Fenn's presence inside the building. An officer responded and found Fenn inside

the "common use area of the building," in an area housing a satellite library (although the library was closed at the time). The responding officer told Fenn to leave, but he refused. The officer then issued Fenn a citation for trespass, which Alirez later offered to hold in abeyance as long as Fenn committed no further violations.

Two weeks later, an officer was dispatched to respond to yet another report of Fenn's trespassing. Fenn told the responding officer he was not trespassing but protesting. Both the officer and Alirez ordered Fenn to leave, and he again refused. Alirez then arrested Fenn and a complaint was filed against him for Criminal Trespass pursuant to N.M. Stat. § 30-14-1(C).

In the criminal case, Fenn filed a motion to dismiss for failure to establish essential elements of the offense. The motion was denied after a hearing. The criminal case, however, was later dismissed without prejudice and never refiled. In the dismissal papers, the district attorney stated the charges were being dismissed because there was "insufficient evidence to proceed with charges at this time." App. at 117.

## II. Analysis

Fenn argues that all of his claims should be allowed to proceed to trial. We disagree, concluding the district court properly granted qualified immunity on Fenn's § 1983 claims of First Amendment retaliation and malicious prosecution.

Fenn did not establish the elements of these constitutional claims. And because those claims fail, his claims for supervisory liability against Alirez and for *Monell* liability against the City also fail. Finally, Fenn's state claim for malicious abuse of process fails because he cannot show the criminal complaint was unsupported by probable cause.

We review de novo a district court's dismissal of an action under Rule 12(b)(6), as well as a district court's grant of summary judgment under Rule 56. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (Rule 12(b)(6) dismissals); *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (grants of summary judgment).

Defendants here raised a defense of qualified immunity, "which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted).

We consider each of Fenn's claims in turn.

-6-

## A. First Amendment Retaliation

Fenn argues that he has sufficiently alleged the violation of his First Amendment right to peaceful assembly and protest, and that the district court erred in concluding otherwise. We disagree.

To prove a claim of retaliation for the exercise of First Amendment rights, Fenn must establish: (1) he was engaged in constitutionally protected activity; (2) that Defendants' actions caused Fenn to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the Defendants' adverse action was substantially motivated as a response to Fenn's exercise of constitutionally protected conduct. *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

Fenn has failed to establish a violation of his First Amendment rights for two reasons. First, he has not shown he was engaged in constitutionally protected activity because the Center is not the type of public forum in which the government must allow picketing and other forms of protest Fenn claims to have engaged in. "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799–800 (1985). The Center is a city-owned building, leased to various entities, and we conclude it is a nonpublic

forum. In contrast, traditional public fora are places that "by long tradition or by government fiat have been devoted to assembly and debate," such as streets, sidewalks, and parks. *Perry Ed. Ass'n v. Perry Local Ed. Ass'n*, 460 U.S. 37, 45 (1983).

Our case law illustrates this distinction.[1] In *Hawkins v. City & County of Denver*, 170 F.3d 1281, 1287–88 (10th Cir. 1999), we held that the main walkway of the Denver Performing Arts Complex, which the city leased to several commercial and public agency tenants, was not a traditional public forum despite its high volume of public traffic. We explained that although the walkway was generally open to the public, "[p]ublicly owned or operated property does not become a public forum simply because members of the public are permitted to come and go at will." *Id.* at 1287 (internal quotations omitted). That is because "when government property is not dedicated to open communication, the government may—without further justification—restrict use to those who participate in the forum's official business." *Perry*, 460 U.S. at 53; *see also International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 686 (1992) (O'Connor, J., concurring). We also noted in *Hawkins* that the walkway was not

---

[1] In addition, a designated public forum is a place the government creates "by intentionally opening a non-traditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985). Fenn has not argued the Center is a designated public forum.

analogous to a public right of way or thoroughfare because it "does not form part of Denver's . . . transportation grid, for it is closed to vehicles, and pedestrians do not generally use it as a throughway to another destination." 170 F.3d at 1287.

The same holds true with respect to the Center, which has been leased to various tenants for specific uses, and is not used as a throughway or other pedestrian walkway. Even if the Center may have at one time been "open-to-the-public space," as Fenn puts it, that does not by itself confer the status of a traditional public forum. "The government may, by changing the physical nature of its property, alter it to such an extent that it no longer retains its public forum status." *Hawkins*, 170 F.3d at 1287. And while First Amendment restrictions in a nonpublic forum may still be challenged as unreasonable in light of the purposes they are intended to serve, *see id.* at 1288–89, Fenn has made no such argument here. Rather, he continues to insist that the Center is a traditional public forum for purposes of the First Amendment. It is not.

Second, where the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 252, 265–66 (2006) (retaliatory prosecution); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) (retaliatory arrest). The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim, and Fenn has not shown a lack of probable cause here.

"Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). Here, the Defendants had ample trustworthy information that would have led a reasonable officer to believe Fenn had committed criminal trespass under New Mexico law. The relevant portion of the trespass statute states: "Criminal trespass . . . consists of knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof." N.M. Stat. § 30-14-1(C). The Center is owned by the City of Truth or Consequences. And Fenn's own complaint alleges that building tenants reported to the police that Fenn's behavior made some tenants feel unsafe and gave rise to concerns about damage or theft, thus resulting in at least three no-trespass notices being issued against him. App. at 10–12. On this set of facts, there was probable cause for the officers to arrest Fenn after multiple violations of that notice, and for the subsequent prosecution of Fenn for criminal trespass.

Fenn argues, however, that a lack of probable cause is not a required element of First Amendment retaliation under the circumstances presented here. He claims to fit within a narrow exception to the no-probable-cause requirement,

as described by the Supreme Court in *Nieves*. In that case, the Court held a plaintiff need not show a lack of probable cause "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1727. But Fenn has not pointed to any evidence in the record that he was arrested when other similarly situated individuals were not. Indeed, it seems unlikely that any such similarly situated individuals exist. The record demonstrates, after all, that Fenn was arrested only after having violated no-trespass orders at the Center at least three times, and only after multiple complaints from building tenants about his behavior. Fenn does not fit within the narrow exception carved out in *Nieves*.

Accordingly, because Fenn has not shown he was engaged in constitutionally protected activity and because Defendants had probable cause for Fenn's arrest and prosecution, he has not established a constitutional claim for First Amendment retaliation.

### B. Malicious Prosecution under § 1983

To state a § 1983 claim for malicious prosecution, a plaintiff must show, among other things, that the original action terminated in favor of the plaintiff, and that no probable cause supported the original arrest, continued confinement, or prosecution. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). While

-11-

Fenn has established—for summary judgment purposes—that the prosecution ended in his favor, he again fails to establish that probable cause was lacking.

To show that the termination was favorable, a plaintiff must allege facts that, if true, would allow a reasonable jury to find the proceedings terminated "for reasons indicative of innocence." *See M.G. v. Young*, 826 F.3d 1259, 1263 (10th Cir. 2016). Here, the charges were dismissed without prejudice, and the state court denied Fenn's motion to dismiss for failure to establish all the elements of the offense. Defendants point to case law stating that a § 1983 malicious prosecution claim may proceed "only if the criminal prosecution against the plaintiff is disposed of in a way which indicates his innocence." *Mendoza v. K-Mart, Inc.*, 587 F.2d 1052, 1057 (10th Cir. 1978).

Dismissal without prejudice does not necessarily indicate innocence, but here the district attorney stated in the dismissal papers that there was insufficient evidence to proceed. When the issue of termination indicating innocence is unclear, the court "look[s] to the stated reasons for the dismissal as well as to the circumstances surrounding it and determine[s] whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Cordova v. City of Albuquerque*, 816 F.3d 645, 651 (10th Cir. 2016) (internal quotations omitted). The surrounding circumstances point in both directions, but Fenn has cleared this

hurdle for summary judgment purposes based on the district attorney's stated reason for the dismissal.

Probable cause is an element of malicious prosecution "because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." *See Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004). Fenn cannot show that his prosecution was without probable cause, for the same reasons discussed above. His own complaint establishes a basis for probable cause to support his arrest and prosecution. A reasonable officer would have believed that probable cause existed given New Mexico's definition of criminal trespass and the multiple complaints from various tenants about Fenn's behavior.

The district court did not err in dismissing this claim.

### C. **Monell** *and Supervisory Liability*

In the single paragraph Fenn devotes to these claims in his brief, he argues only that if the panel overturns the district court's qualified immunity determination with respect to the individual defendants, then the *Monell* and supervisory claims must be revived. This argument implicitly recognizes that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774,

782 (10th Cir. 1993). Because Fenn cannot establish a violation of a clearly established constitutional right, his *Monell* and supervisory liability claims fail.

Accordingly, the claims against the City and Alirez were properly dismissed.

### D. Malicious Abuse of Process Under New Mexico Law

The district court also correctly granted summary judgment on Fenn's state law claim. The elements of malicious abuse of process are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. *Fleetwood Retail Corp. v. LeDoux*, 164 P.3d 31, 35 (N.M. 2007). A mere allegation that one has maliciously filed a complaint is insufficient to state a claim unless it was done without probable cause or was accompanied by some subsequent abuse of process. *Durham v. Guest*, 204 P.3d 19, 25 (N.M. 2009). Fenn has made no allegation of an abuse of process after the complaint was filed, so he must show the criminal complaint was unsupported by probable cause. For the same reasons discussed above, Fenn cannot make such a showing.

# III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of Fenn's First Amendment retaliation claims and its granting of summary judgment in favor of the Defendants on Fenn's remaining claims.