**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**April 13, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JESSI ISAACS, as personal representative
for the Estate of Rhindi Kay Issacs,
deceased and next of kin,

     Plaintiff - Appellant,

v.

KONAWA PUBLIC SCHOOLS,
Independent School District I-004,
KONAWA PUBLIC SCHOOLS BOARD
OF EDUCATION; JOSEPH SCOGGINS,
in his official capacity as employee of
Konawa Public Schools and in his
individual capacity,

     Defendants - Appellees.

_____

NATHAN ISAACS, on behalf of Jaylyn
Isaacs, a minor child; JEROME SNIDER,
on behalf of Lilly Snider, a minor child,

     Plaintiffs - Appellants,

v.

KONAWA PUBLIC SCHOOL DISTRICT
I-004 and JOSEPH SCOGGINS, as
employee of Konawa Public Schools,

     Defendants - Appellees.

No. 21-7016
(D.C. No. 6:20-CV-00187-KEW)
(E.D. Okla.)

No. 21-7039
(D.C. No. 6:20-CV-00358-KEW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **EBEL**, and **BACHARACH**, Circuit Judges.

_____

This appeal consolidates two cases stemming from a tragic school bus crash that killed one student, Rhindi Isaacs, and injured five others, including Jaylyn Isaacs and Lilly Snider.  In 21-7016, Jessi Isaacs—Rhindi's mother and personal representative of her estate—sued the bus driver, Joseph Scoggins; the Konawa Public Schools, Independent School District ("the District"); and the Board of Education of Konawa Public Schools ("the Board").  In 21-7039, Nathan Isaacs and Jerome Snider, fathers of Jaylyn and Lilly, sued the same defendants for their daughters' injuries.  The parents in each case alleged (1) Fourteenth Amendment substantive due process claims under 42 U.S.C. § 1983 and (2) state law claims.

The district court granted the defendants' motions to dismiss in both cases and denied the plaintiffs' requests to amend their pleadings.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A.  *Factual History*

In reviewing the grant of a motion to dismiss, we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff.  *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  The following summarizes the allegations in the two cases.[1]

### 1.  **Isaacs - 21-7016**[2]

On the evening of March 8, 2019, Joseph Scoggins, coach of the Konawa Junior High School softball team, was driving a school bus on a two-lane road with six student-athletes as the team returned from a softball game in Okemah, Oklahoma.  The team members were all seated in the first three rows of the bus except for Rhindi.  Mr. Scoggins "permitted [her] to sit alternately on the steps on the bus and on the floor adjacent to the driver's seat."  21-7016 App. at 42 ¶ 28.

As the bus traveled down the road, the students and Mr. Scoggins spotted an SUV on the wrong side of the road traveling towards them.  "Other drivers who had reported

---

[1] We do not consider facts included in the Appellants' briefs in 21-7016 and 21-7039 that were not alleged in the pleadings.  *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true, and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal." (quotations and citations omitted)).

[2] Ms. Isaacs initiated suit by filing a petition in Oklahoma state district court.  The defendants removed the case to federal court, and Ms. Isaacs filed an amended complaint, the operative pleading in 21-7016.

the erratic SUV had pulled over to avoid a collision." *Id.* at 40 ¶ 14. Mr. Scoggins, however, told the students that he "plan[ned] to avoid the accident" by veering into the left lane just before impact "so that the [oncoming SUV] would hit the back of the bus." *Id.* at 39 ¶ 13.

As Mr. Scoggins steered the bus into the left lane, the SUV driver, John Tallbear, changed into the same lane. The two vehicles collided head-on. Rhindi was in the bus's stairwell, the "very spot" where the two vehicles collided. *Id.* She died in the crash. *Id.* at 39 ¶¶ 12, 13.

After the crash, Sean Walker, the school principal, arrived on scene and began searching for the students, locating every student but Rhindi. When Mr. Walker inquired about Rhindi, Mr. Scoggins first said she "was on the right side of the bus with two other student athletes," then said she had been taken by ambulance to the hospital. *Id.* at 39 ¶ 11. While en route to the hospital, Mr. Walker learned that Rhindi had died on the bus.

2. ***Isaacs and Snider - 21-7039***[3]

The allegations in the second suit largely overlapped those in the first. Mr. Isaacs and Mr. Snider alleged that on March 8, 2019, a bus carrying six students and driven by Mr. Scoggins collided head-on with an oncoming SUV. Before the crash, Jaylyn, seated in the third row, saw the oncoming vehicle and "dove toward the floor under the seat

---

[3] Mr. Isaacs and Mr. Snider brought suit by filing a petition in Oklahoma state district court. They did not file a complaint or amended complaint after the defendants removed the case to federal district court. The petition is therefore the operative pleading in 21-7039.

before her." 21-7039 App. at 10 ¶ 12. Lilly was standing behind Mr. Scoggins. Mr.

Scoggins "chose at the last second to veer into the left lane to avoid collision, just as

[Mr.] Tallbear . . . chose to correct back into the same lane. Many other vehicles in the

path of [the SUV] simply chose to pull over and stop until it was safe to proceed."

*Id.* ¶ 14. "On impact, Jaylyn hit the seat post." *Id.* at 10 ¶ 12. Lilly was thrown through

the windshield. Both sustained injuries and still suffer "severe stress" due to trauma.

*Id.* at 10 ¶¶ 9, 12-13.

## B. *Legal Background*

### 1. **Section 1983 and Qualified Immunity**

Title 42 U.S.C. § 1983 provides that a person acting under color of state law who

"subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured." When a defendant raises a qualified immunity defense, the

plaintiff bears the burden of overcoming it. *Ashaheed v. Currington*, 7 F.4th 1236, 1243

(10th Cir. 2021). "To do so on a motion to dismiss, a plaintiff must (1) plead facts

demonstrating the defendant violated a federal constitutional or statutory right, and (2)

show that the right was clearly established at the time of the defendant's conduct." *Id.*

### 2. **Section 1983 Substantive Due Process Claims**

Two types of "[c]laims for 'substantive due process' find their basis in the

Fourteenth Amendment's protections against arbitrary government power," *Lindsey v.*

*Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019): "(1) claims that the government has

infringed a 'fundamental' right; and (2) claims that government action deprived a person

5

of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."

*Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (quotations and citations

omitted).  "[W]e apply the fundamental-rights approach when the plaintiff challenges

*legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief

for tortious *executive action*."  *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).

The Appellants "seek[] relief for tortious executive action" and therefore tried to assert a

shocks-the-conscience claim.  *Id.* (quotations and emphasis omitted).

Some of the Appellants' claims allege harm from Mr. Tallbear's private conduct.

As a general rule, "a State's failure to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause."  *DeShaney v.

Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  But there are two

exceptions to this rule.  First, the danger-creation exception applies "when a state actor

affirmatively acts to create, or increase a plaintiff's vulnerability to, danger from private

violence."  *T.D. v. Patton*, 868 F.3d 1209, 1221 (10th Cir. 2017) (quotations and

alterations omitted).[4]  Second, the special-relationship exception applies "when the state

---

[4] To invoke this exception, a plaintiff must initially show (1) "affirmative conduct
on the part of the state in placing the plaintiff in danger" and (2) private violence.  *Est. of
B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (quotations omitted).  The plaintiff
then must demonstrate that "(1) the [defendants] created the danger or increased
plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a
limited and specifically definable group; (3) defendants' conduct put plaintiff at
substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or
known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such
conduct, when viewed in total, is conscience shocking."  *Currier v. Doran*, 242 F.3d 905,
918 (10th Cir. 2001).

assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual" from private violence. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quotations omitted).[5]  A plaintiff alleging a claim under either exception must prove the defendant's actions shocked the conscience. *Hubbard v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, 759 F. App'x 693, 708 (10th Cir. 2018) (unpublished).[6]

3.  **Shocks the Conscience Standard**

Executive action that shocks the conscience requires much more than negligence. *Halley*, 902 F.3d at 1155.  "Conduct that shocks the judicial conscience . . . is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).  "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression."

---

[5] A plaintiff asserting a special-relationship claim must establish (1) "the existence of a special relationship, meaning that the plaintiff completely depended on the state to satisfy basic human needs"; (2) "that the defendant knew that the plaintiff was in danger or failed to exercise professional judgment regarding that danger"; (3) "that the defendant's conduct caused the plaintiff's injuries"; and (4) "that the defendant's actions . . . shock the conscience." *Dahn v. Amedei*, 867 F.3d 1178, 1185-86 (10th Cir. 2017).

[6] We cite this unpublished decision only for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1.(A).

*Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quotations and alterations omitted).

When deciding whether conduct shocks the conscience, "we must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims:  (1) the need for restraint in defining their scope, (2) the concern that § 1983 not replace state tort law, and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."  *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (citations omitted).

"When governmental officials face a situation 'calling for fast action,' only official conduct done with an intent to harm violates the Fourteenth Amendment."  *Perez v. Unified Gov't of Wyandotte Cnty./Kansas City*, 432 F.3d 1163, 1166 (10th Cir. 2005) (quoting *Lewis*, 523 U.S. at 853).  "The intent to harm standard is not limited to situations calling for split-second reactions.  Rather, it applies whenever decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'"  *Id.* (quoting *Lewis*, 523 U.S. at 853).

4.  **Municipal Liability Under § 1983**

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  "[T]o establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the

8

injury alleged." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted); *see Monell*, 436 U.S. at 690-92; *Waller*, 932 F.3d at 1283-84. The plaintiff must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "But a municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights." *Lindsey*, 918 F.3d at 1117 (quotations and alterations omitted).

C. *Procedural History*

1. *Isaacs - 21-7016*

Ms. Isaacs sued in Oklahoma state court, naming as defendants the District, the Board, and Mr. Scoggins in his official and individual capacities. The defendants removed the case to the Eastern District of Oklahoma. The amended complaint tried to allege a substantive due process violation on the grounds that the defendants (1) deprived Rhindi of life in a manner that shocked the conscience or (2) created danger of harm from Mr. Tallbear's tortious conduct. The amended complaint also alleged state law claims. Mr. Scoggins moved to dismiss all claims, asserting qualified immunity as to the § 1983 claims. The Board and District moved to dismiss all claims other than a state law negligence claim against the District.

In granting the motions, the district court:

- dismissed the Board, determining it was not a proper party because it lacked statutory authority to sue and be sued;

9

- held that neither Mr. Scoggins nor the District deprived Rhindi of life in a manner that violated her substantive due process rights because the amended complaint failed to allege their conduct shocked the conscience;

- held that Ms. Isaacs had not stated a danger-creation claim against Mr. Scoggins or the District because the amended complaint did not allege (1) their affirmative conduct placed Rhindi in danger, (2) private violence, or (3) that their conduct shocked the conscience—all necessary elements for establishing such a claim;

- held that Mr. Scoggins was entitled to qualified immunity because he had not violated Rhindi's substantive due process rights under either theory of § 1983 liability;

- dismissed the official capacity claims against Mr. Scoggins because they were duplicative of the § 1983 claims against the District; and

- denied Ms. Isaacs' informal request seeking leave to amend the pleadings.

The court also declined to exercise supplemental jurisdiction over the remaining state claims and remanded them to state court. The court entered final judgment, and Ms. Isaacs timely appealed.

2. ***Isaacs and Snider - 21-7039***

Mr. Isaacs and Mr. Snider filed suit in Oklahoma state court, alleging (1) that Mr. Scoggins, the Board, and the District were "deliberately indifferent" to student safety, in violation of their daughters' Fourteenth Amendment rights and (2) state law tort claims. 21-7039 App. at 9-13. The defendants removed the case to the Eastern District of Oklahoma and moved to dismiss all claims other than a state law negligence claim against the District.

In granting the motion, the district court:

- held that the plaintiffs sued Mr. Scoggins only in his official capacity and dismissed the § 1983 claims against him because they were duplicative of the § 1983 claims against the District;

10

- dismissed the Board, concluding it was not a proper party to the suit;

- held that the plaintiffs failed to allege substantive due process claims against the District under either a danger-creation or a special-relationship theory; and

- rejected plaintiffs' "informal request for leave to amend their petition" because they never formally moved to do so, *id.* at 87-88.

The court declined to exercise supplemental jurisdiction over plaintiffs' state law claims and entered judgment. Plaintiffs timely appealed.

## II. **DISCUSSION**

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Schell v. Chief Just. & Justs. of Okla. Supreme Ct.*, 11 F.4th 1178, 1186 (10th Cir. 2021) (quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A. *Analysis*

### 1. *Isaacs - 21-7016*

The district court properly dismissed the danger-creation claim against Mr. Scoggins—the only substantive due process claim against him preserved on appeal[7]— because the amended complaint failed to allege that his conduct shocked the conscience.

---

[7] Ms. Isaacs has abandoned her claim that Mr. Scoggins's conduct deprived Rhindi of life in manner that violated the Fourteenth Amendment. Even had she preserved this claim, we would affirm dismissal of it because the amended complaint did not plausibly allege that Mr. Scoggins's actions shocked the conscience. *See Moore*, 438 F.3d at 1040.

He is therefore entitled to qualified immunity. Because the amended complaint did not allege that Mr. Scoggins or any other municipal employee committed a constitutional violation, the district court correctly dismissed the § 1983 municipal liability claims against the District.[8]

a. *Section 1983 danger-creation claim against Mr. Scoggins*

Ms. Isaacs argues the amended complaint adequately alleged that Mr. Scoggins created or increased the danger to Rhindi by (1) allowing Rhindi to "stand or sit in the stairwell of the bus while the bus was in motion," (2) crashing into Mr. Tallbear's vehicle instead of slowing down and pulling over, and (3) "stepp[ing] over [Rhindi's] body to exit the bus" and "purposely misle[ading] the Principal about her location." 21-7016 Aplt. Br. at 16-18.

Ms. Isaacs needed to allege facts demonstrating that Mr. Scoggins's actions shocked the conscience. *See Patton*, 868 F.3d at 1222. She has not done so. In an emergency, conduct shocks the conscience only when it is "done with an intent to harm." *Perez*, 432 F.3d at 1166; *Radecki v. Barela*, 146 F.3d 1227, 1230 (10th Cir. 1998).

Here, the students spotted the SUV "approaching from over the hill in their lane." 21-7016 App. at 39 ¶ 13. Although the amended complaint did not allege how much time elapsed between spotting the SUV and the collision, the "intent to harm" standard applies because it "is not limited to situations calling for split-second reactions. Rather, it

---

[8] We do not decide whether the district court erred in dismissing the § 1983 claims against the Board. Even if it did, those claims would fail for the same reasons the claims against the District fail.

applies whenever decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Perez*, 432 F.3d at 1163 (quoting *Lewis*, 523 U.S. at 853). That is what the amended complaint alleged here.

In the lead-up to the accident, the students on the bus "could see a vehicle approaching from over the hill in their lane." 21-7016 App. at 39 ¶ 13. Mr. Scoggins "communicated his plan to avoid the accident to the student athletes," which involved "veer[ing] into the left lane" "just prior to the moment of impact . . . so that the vehicle would hit the back of the bus." *Id.* But as Mr. Scoggins steered the bus into the left lane "the driver of the SUV was attempting to return to his lane," and the two vehicles collided "head-on" with the "impact occur[ing] at the very spot where Rhindi [] was standing." *Id.* at 40 ¶ 15.

These allegations fail to demonstrate that Mr. Scoggins intended to harm Rhindi.[9] First, the amended complaint characterizes Mr. Scoggins's plan to veer into the left lane as a "plan to avoid the accident," *id.* at 39 ¶ 13, hardly a plan to harm Rhindi. Second, Mr. Scoggins expected the SUV to hit the back of the bus to avoid direct impact to the

---

[9] Ms. Isaacs also appears to argue that Mr. Scoggins should be liable because he violated federal regulations by (1) driving while Rhindi was not in a seat and (2) crossing the center line. 21-7016 Aplt. Br. at 25. She does not specify which regulations Mr. Scoggins may have violated. But even if she had, this argument would fail because, as alleged, Mr. Scoggins's conduct did not shock the conscience. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1178, 1184 (10th Cir. 2002) (failure to follow regulations did not amount to a substantive due process violation because defendants' conduct did not shock the conscience). And any suggestion that Mr. Scoggins committed a substantive due process violation through non-compliance with state traffic laws lacks merit. *See Pavatt v. Jones*, 627 F.3d 1336, 1341 (10th Cir. 2010) ("A violation of state law does not by itself constitute a violation of the Federal Constitution." (quotations omitted)).

students—again, hardly an intent to harm. Although Mr. Scoggins should not have allowed Rhindi to ride on the floor and steps, he did not intend for the SUV to hit the bus where Rhindi stood. <u>Third</u>, when Mr. Scoggins decided to change into the left lane, the SUV was still in the right lane. He may have risked that the SUV would return to its proper lane, but it was not a risk taken with intent to harm.[10]

Based on the allegations in the amended complaint, we cannot conclude Mr. Scoggins intended to harm Rhindi. His conduct therefore did not shock the conscience.[11] Thus, we affirm the district court's conclusion that Mr. Scoggins did not violate Rhindi's Fourteenth Amendment rights under a danger-creation theory. And because Mr. Scoggins did not commit an underlying constitutional violation, we affirm the grant of qualified immunity to Mr. Scoggins.

---

[10] The amended complaint also failed to allege that Mr. Scoggins's conduct was "directed at" Rhindi, *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 926 (10th Cir. 2012) (quotations omitted) (emphasis removed), another requirement for stating a danger-creation claim.

[11] Ms. Isaacs also argues that Mr. Scoggins violated Rhindi's Fourteenth Amendment rights by "stepp[ing] over her body to exit the bus" and "purposely misle[ading] the Principal about her location." 21-7016 Aplt. Br. at 17-18. But according to the amended complaint, Rhindi died before Mr. Scoggins took these actions. *See* 21-7016 App. at 45 ¶ 39 (Mr. Scoggins "recklessly disregarded [Rhindi's] bodily integrity by failing to remove her from the bus and by further intentionally failing to inform the principal of her whereabouts and actively deceiving the princip[al] concerning her whereabouts which resulted in the remains of Rhindi Isaacs to be consumed by the fire."). "[T]he civil rights of a person cannot be violated once that person has died." *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980).

b.  *Section 1983 claims against the District*

Ms. Isaacs argues the district court erred in dismissing the claim that the District

violated Rhindi's substantive due process rights through its policies of (1) requiring bus

drivers to work in excess of fifteen hours per day and (2) failing to provide a chaperone

on "activity trips."  21-7016 Aplt. Br. at 7.  She also contends the court erred in

dismissing a separate, purported substantive due process claim alleging that the District

was "deliberately indifferent to the safety needs of Rhindi."  *Id.* at 24.  We disagree.

"[A] municipality may not be held liable for the actions of its employees if those

actions do not constitute a violation of a plaintiff's constitutional rights."  *Lindsey*, 918

F.3d at 1117 (quotations omitted).  Because Ms. Isaacs did not allege that Mr. Scoggins

or any other municipal employee committed an underlying constitutional violation, the

District cannot be liable under § 1983.  *See Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d

775, 788 (10th Cir. 2013) (school district not liable under *Monell* because plaintiffs did

not establish that any district employee committed a constitutional violation); *Fenn v.

City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020).

We affirm the district court's dismissal of Ms. Isaacs's claims that the District

violated Rhindi's substantive due process rights.[12]

---

[12] The district court dismissed the danger-creation claim against the District because Ms. Isaacs did not allege (1) that the District's affirmative conduct placed Rhindi in danger, and (2) private violence—different grounds than the one on which we affirm. *See Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021) ("[W]e may *affirm* on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." (quotations omitted)).

15

\*    \*    \*    \*

We affirm the district court's order dismissing the substantive due process claims against Mr. Scoggins and the District and remanding the state law claims to the district court of Seminole County, Oklahoma.  We do not address whether the district court erred in denying Ms. Isaacs' request to amend the pleadings because she has waived that issue due to inadequate briefing.  *See Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019).

2. *Isaacs and Snider - 21-7039*[13]

To the extent Mr. Isaacs and Mr. Snider attempted to allege any substantive due process claims against Mr. Scoggins in his individual capacity, they did not plausibly allege that Mr. Scoggins's conduct shocked the conscience.  And because the petition did not allege that Mr. Scoggins or any other municipal employee committed a constitutional violation, we affirm dismissal of the substantive due process claims against the District.[14] Finally, the district court did not abuse its discretion by denying Mr. Isaacs and Mr. Snider's informal request to amend their pleadings.

a. *Section 1983 substantive due process claims against Mr. Scoggins*

On appeal, Mr. Isaacs and Mr. Snider appear to argue that they asserted substantive due process claims against Mr. Scoggins in his individual capacity based on

---

[13] We affirm the district court's dismissal of the § 1983 claims against Mr. Scoggins and the District but do so on the alternative grounds stated below. *Hayes*, 12 F.4th at 1201.

[14] We do not address whether the district court erred in dismissing the claims against the Board because even if it did, those claims would fail for the same reasons the claims against the District fail.

16

(1) danger-creation, (2) special-relationship, and (3) shocks-the-conscience theories. 21-7039 Aplt. Br. at 6-7.  It does not appear they alleged any such claims in their petition. *See* 21-7039 App. at 9-13.[15]  But even assuming they did, the petition did not plausibly allege that Mr. Scoggins's conduct shocked the conscience.

To establish substantive due process liability, Mr. Isaacs and Mr. Snider needed to allege facts demonstrating that Mr. Scoggins's actions shocked the conscience.  *See Patton*, 868 F.3d at 1222; *Dahn*, 867 F.3d at 1185-86; *Lindsey*, 918 F.3d at 1115-16.  As discussed above, the oncoming SUV created a fast-moving emergency and the "intent to harm" standard applies to decide whether Mr. Scoggin's conduct shocked the conscience. Mr. Isaacs and Mr. Snider failed to allege Mr. Scoggins intended to harm Jaylyn and Lilly.[16]

The petition alleged that Mr. Scoggins "chose at the last second to veer into the left lane to avoid collision, just as [Mr.] Tallbear . . . chose to correct back into the same lane," 21-7039 App. at 10 ¶ 14, and that "instead of pulling to the shoulder of the road to stop in order to minimize the risk of impact or minimize the injuries at impact, [Mr.

---

[15] Mr. Isaacs and Mr. Snider did not raise a special relationship claim until their brief in response to the Defendants' motion to dismiss, and they have not tried to amend their complaint to add such a claim.  They have therefore failed to allege such a claim. *See Waller*, 932 F.3d at 1286.  And the facts alleged do not establish a special relationship under *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1234-35 (10th Cir. 2000).

[16] The petition lists Mr. Scoggins as a defendant in his individual and official capacities.  On appeal, Mr. Isaacs and Mr. Snider do not contest the district court's dismissal of the official capacity claims.

17

Scoggins] veered into oncoming traffic, thereby increasing the possibility that he would encounter numerous oncoming vehicles," *id.* at 11-12 ¶ 24. The petition also alleged that "[m]any other vehicles in the path of [Mr.] Tallbear simply chose to pull over and stop until it was safe to proceed." *Id.* at 10 ¶ 14.

As in 21-7016, these allegations do not show that Mr. Scoggins intended to harm Jaylyn or Lilly.[17] Indeed, the petition alleged that Mr. Scoggins "veer[ed] into the left lane *to avoid collision*." *Id.* (emphasis added). Although the petition alleged that Mr. Scoggins "veered into oncoming traffic," *id.* at 11 ¶ 24, it also stated that Mr. Tallbear did not return to his lane until the moment that Mr. Scoggins veered into that same lane, *see id.* at 10 ¶ 14. Thus, when Mr. Scoggins decided to change into the left lane, he did so to avoid the SUV. He may have run the risk that Mr. Tallbear would return to his lane, but the allegations in no way support that Mr. Scoggins intended to cause the crash.

Because Mr. Isaacs and Mr. Snider did not plausibly allege that Mr. Scoggins intended to harm Jaylyn and Lilly, we conclude that his conduct fell short of shocking the conscience. They therefore did not state a substantive due process claim against Mr. Scoggins.

---

[17] Mr. Isaacs and Mr. Snider argue that Mr. Scoggins's actions shocked the conscience because he "illegally cross[ed] the center line." 21-7039 Aplt. Br. at 25. But even if crossing the center line violated Oklahoma law, "[a] violation of state law does not by itself constitute a violation of the Federal Constitution." *Pavatt*, 627 F.3d at 1341 (quotations omitted).

b. *Section 1983 claims against the District*

As in 21-7016, because Mr. Isaacs and Mr. Snider have not alleged that that Mr. Scoggins or any other municipal employee committed an underlying constitutional violation, we affirm the dismissal of the § 1983 claims against the District. *See Muskrat*, 715 F.3d at 788.

c. *Request to amend the pleadings*

Mr. Isaacs and Mr. Snider argue the district court abused its discretion when it denied their informal request to amend their pleadings. "We review the district court's denial of leave to amend for an abuse of discretion." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1033 (10th Cir. 2020).

Mr. Isaacs and Mr. Snider did not move to amend their complaint. Instead, in their opposition to the motion to dismiss, they requested the court to grant them "leave to amend their complaint so as to comply with the Court's concerns and the movants' concerns about its legal and factual sufficiency" if "this Court interprets the pleading requirement in any way different from the Plaintiffs." 21-7039 App. at 55. "We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021). The district court therefore did not abuse its discretion by denying Mr. Isaacs and Mr. Snider's request.

19

## III. **CONCLUSION**

We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge