# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1726

_____

Mason Murphy

*Plaintiff - Appellant*

v.

Michael Schmitt, Officer, in his individual capacity

*Defendant - Appellee*

Jerry Pedigo, Corporal, in his individual capacity and in his official capacity;
Camden County, Missouri

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: January 11, 2023
Filed: September 6, 2023
[Unpublished]

_____

Before GRASZ, MELLOY, and KOBES, Circuit Judges.

_____

PER CURIAM.

Officer Michael Schmitt stopped Mason Murphy while Murphy was walking on the wrong side of a rural road. Murphy refused to identify himself, and the two men argued for a few minutes before Schmitt arrested Murphy. Murphy sued Schmitt for First Amendment retaliation. The district court[1] granted Schmitt's motion to dismiss based on qualified immunity. We affirm.

I.

Schmitt was patrolling a rural road when he saw Murphy walking along the right side of the road with traffic. A Missouri statute requires pedestrians to "walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction." Mo. Rev. Stat. § 300.405. Schmitt stopped his car, approached Murphy, and asked Murphy to identify himself. Murphy refused to identify himself, and Schmitt put Murphy in handcuffs after nine minutes of argument. Murphy asked why Schmitt arrested him, and Schmitt refused to answer. On the drive to the sheriff's department, Murphy again asked Schmitt why he was being arrested. Schmitt responded that the arrest was for "failure to identify." Once at the station, Schmitt can be heard making a call to an unknown individual and saying he "saw the dip shit walking down the highway and [he] would not identify himself." Schmitt then asked the unknown individual: "What can I charge him with?" Officers eventually identified Murphy by a credit card he was carrying. Officers confirmed Murphy had no outstanding warrants and released him.[2] Murphy was in the jail cell for approximately two hours.

Murphy asserts he was arrested in retaliation for exercising his First Amendment right to argue with police. Murphy filed a suit alleging unlawful

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

[2]Schmitt's equipment captured interactions between Murphy and Schmitt from the time of Schmitt's initial approach to the time of Murphy's eventual release.

detention and First Amendment retaliation. The district court granted Schmitt's motion to dismiss based on qualified immunity. The parties agree Schmitt had probable cause to stop Murphy because Murphy was in violation of Missouri Revised Statute § 300.405. Murphy appeals the dismissal of the First Amendment retaliation claim.

## II.

We review the grant of a motion to dismiss based on qualified immunity de novo. Carter v. Huterson, 831 F.3d 1104, 1107 (8th Cir. 2016). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A First Amendment retaliation claim has three elements: "(1) [the plaintiff] engaged in a protected activity, (2) the government official took adverse action against [the plaintiff] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Greenman v. Jessen, 787 F.3d 882, 891 (8th Cir. 2015) (citations omitted). In First Amendment retaliation cases, "probable cause should generally defeat a retaliatory arrest claim[.]" Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019). The Supreme Court arguably reserved one "narrow qualification" to the general rule: "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. (discussing but not applying such an exception). Evidence as to the exception allows "an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard. Because this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant' at this stage." Id. (citation omitted).

The parties agree Schmitt had probable cause to arrest Murphy because Murphy was in violation of Missouri Revised Statute § 300.405. Murphy argues the facts in this case fit into the possible Nieves exception because, like the hypothetical in Nieves, this is a situation where "officers have probable cause to make arrests, but typically exercise their discretion not to do so." Id. But here, Murphy has not pleaded facts sufficient to demonstrate a "facial plausibility" that police commonly see violations of § 300.405 on similar roads and fail to make arrests. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Supreme Court in Nieves gave an example of an individual who is arrested for jaywalking in an intersection where "jaywalking is endemic but rarely results in arrest" while the individual is "vocally complaining about police conduct[.]" Nieves 139 S. Ct. at 1727. Murphy relies heavily on the similarities between jaywalking and walking on the wrong side of the road to prove his point. While the crimes of jaywalking and walking on the wrong side of the road are similar, the totality of the circumstances between the example given in Nieves and the facts of this case differ. The hypothetical given by the Supreme Court specifies an arrest for jaywalking at an intersection where jaywalking is "endemic." Murphy's assertion that "[a] reasonable opportunity for further investigation or discovery will show that no one else in recent memory has been detained or arrested by any law enforcement officers . . . for walking on the wrong side of the road" does little to show officers typically witness violations of § 300.405 and exercise their discretion not to arrest. Murphy also asserts that "[w]alking on the wrong side of the road occurs all the time on the highways with wide shoulders" and the situation was one "where officers have probable cause to make arrests, but typically exercise their discretion not to." These are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" that "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 663–4. To "determin[e] whether a complaint states a plausible claim[,]" we "draw on . . . experience and common sense." Id. As a matter of experience and common sense the present allegations do not show violations of § 300.405 are so common as

-4-

to be "endemic" or are so frequently observed as to give rise to a "reasonable inference" that officers "typically exercise their discretion" not to arrest.

The above notwithstanding, Murphy argues the subjective intent of Officer Schmitt is so apparent as to require a finding of retaliation. We disagree. The Supreme Court has been clear that "[a] particular officer's state of mind is simply 'irrelevant,' and it provides 'no basis for invalidating an arrest.'" Nieves, 139 S. Ct. at 1725 (citations omitted). Such a position is necessary as "[p]rotected speech is often a legitimate consideration when deciding whether to make an arrest." Id. at 1724. "To ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness." Id. at 1725.

## III.

Accordingly, we affirm the judgment of the district court.

GRASZ, Circuit Judge, dissenting.

The First Amendment prohibits a police officer from retaliating against an individual for engaging in protected speech. Murphy alleged Officer Schmitt arrested him because he challenged whether Officer Schmitt could force him to provide his name. The majority concludes that Murphy failed to state a claim because Officer Schmitt had probable cause to arrest Murphy for walking on the wrong side of the road. I respectfully dissent. Because Murphy plausibly asserted that the Sunrise Beach Police Department does not regularly enforce this law, his First Amendment retaliation claim survives under the exception adopted by the Supreme Court in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

At the motion-to-dismiss stage, deciding whether a complaint asserts a plausible claim is "a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009). Here, Murphy asserted a claim under the First Amendment for retaliatory arrest. Normally, a retaliatory arrest claim fails as a matter of law if the police officer had probable cause to arrest the plaintiff. *Nieves*, 139 S. Ct. at 1727. But the Supreme Court has "conclude[d] that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* More specifically, "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* In this context, "an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (quoting *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018)).[3]

As pled, Murphy was walking on the right side of the road, with traffic, when Officer Schmitt stopped his police car, exited, and demanded Murphy identify himself. Murphy declined to provide his name. Instead, he continually asked Officer Schmitt why he was detained. During the nearly ten minutes before Officer Schmitt arrested him, Murphy criticized and challenged Officer Schmitt. Officer Schmitt did not immediately provide a reason for the arrest.

---

[3]The *Nieves* exception is not dicta. When announcing the rule, the Supreme Court used "conclude[d]," which denotes a holding. *Nieves*, 139 S. Ct. at 1727; *see also id.* at 1734 (Gorsuch, J., concurring in part and dissenting in part) ("I would hold, as the majority does, that the absence of probable cause . . . is not an absolute defense."); *id.* at 1741 (Sotomayor, J., dissenting) (referring to "today's holding" as including the exception). The Sixth and Tenth Circuits agree. *Hartman v. Thompson*, 931 F.3d 471, 484 n.6 (6th Cir. 2019); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020). *But see DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019). And when one examines the procedural history of *Nieves*, it is clear the "narrow qualification" was necessary to resolve the issue before the Court.

Later events indicate Officer Schmitt was scrambling to justify the arrest. While in the police car, Officer Schmitt told Murphy he was arrested for "[f]ailure to identify." He then changed his tune when he told someone via his police radio that Murphy was stumbling and walking on the wrong side of the road. Yet Murphy was not stumbling or acting impaired. When Officer Schmitt arrived at the jail with Murphy, he made a phone call in which he described Murphy as a "dip shit walking down the highway" who "would not identify himself" and "ran his mouth off." He then asked, "What can I charge him with?" Later, Officer Schmitt falsely claimed that Murphy was drunk. Officer Schmitt even admitted on multiple occasions that he did not "smell anything" on Murphy. Despite all this, Officer Schmitt insisted Murphy "sit here for being an asshole." Roughly two hours later, Murphy was released.

Under these factual allegations, I cannot join the majority's conclusion that Murphy failed to state a plausible claim. If the Sunrise Beach Police Department regularly enforces the Missouri statute prohibiting a person from walking on the wrong side of the road, one would suspect Officer Schmitt and the other officers he spoke with would have had little trouble identifying that law as the basis for the arrest. Instead, viewing the factual allegations in the complaint in a light most favorable to Murphy, Officer Schmitt arrested Murphy for challenging and criticizing him before later exploring various legal justifications for the arrest. Indeed, the allegations of post hoc decision-making indicate pretext, which supports application of the *Nieves* exception.

Consistent with these observations, and in light of *Nieves*, Murphy pled that "no one else in recent memory has been detained or arrested by any law enforcement officers in either Sunrise Beach or Camden County for walking on the wrong side of the road." This is critical because most, if not all, of the "objective evidence" about whether Sunrise Beach police officers commonly see people walking on the wrong side of the road, but typically exercise their discretion not to arrest, would not be in

Murphy's possession *before* discovery. *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (holding "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible"). Put differently, Murphy never had an opportunity to discover and present "objective evidence" of First Amendment retaliation under *Nieves* because the district court prematurely dismissed Murphy's complaint. It largely negates the Supreme Court's opinion in *Nieves* to require a plaintiff to show "objective evidence" of the type of selective enforcement needed *before* discovery. Yet the court effectively does so by affirming dismissal here.

The inquiry, of course, does not end there. Even if a plaintiff asserts a plausible constitutional claim, the next qualified immunity prong is whether the right was clearly established at the time of the alleged violation. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012). At the Rule 12(b)(6) stage, we ask whether the defendant has shown he is "entitled to qualified immunity on the face of the complaint." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2018)).

As the Supreme Court has explained, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *accord Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987). Building on these First Amendment principles, the Supreme Court held that an individual has the right to be free from a retaliatory arrest, even if supported by probable cause, when otherwise similarly situated individuals not engaged in the

same sort of protected speech had not been arrested. *Nieves*, 139 S. Ct. at 1727; *cf. Reichle*, 566 U.S. at 665–66. At the time Murphy was arrested in 2021, this constitutional right was clearly established. *Nieves*, 139 S. Ct. at 1727; *see also Novak v. City of Parma*, 932 F.3d 421, 430–31 (6th Cir. 2019) (explaining the right was not clearly established until *Nieves* was decided in 2019). Thus, Officer Schmitt has not shown that he is entitled to qualified immunity on the face of the complaint. *See LeMay v. Mays*, 18 F.4th 283, 289–90 (8th Cir. 2021). I respectfully dissent.

––––––––––––––––––––––––––––