**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENHT CIRCUIT**

---

KYLE LINDSEY and ZAYNE
MANN,

        Plaintiffs - Appellants,

v.

BRANDON HYLER, individually and
in his official capacity as a Webbers
Falls Police Officer; THE CITY OF
WEBBERS FALLS, OKLAHOMA;
LARRY RUIZ, in his capacity as
Chief of Police for the City of
Webbers Falls; and BOB ROSS, in his
capacity as Mayor of the City of
Webbers Falls,

        Defendants - Appellees.

No. 17-7074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 6:16-CV-00506-RAW)**

---

Rusty Smith, Rusty Smith Law Group (Erin M. Moore, Erin M. Moore P.C., with
him on the opening brief, and Ben Baker, Purcell, Oklahoma, with him on the
briefs), Muskogee, Oklahoma, for Appellants.

Thomas A. Le Blanc (Matthew B. Free, with him on the brief), Best & Sharp,
Tulsa, Oklahoma, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **CARSON**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

Kyle Lindsey and Zayne Mann were seriously injured when Lindsey lost control of his utility vehicle on a gravel road after a brief police pursuit. They claim the accident was caused by an overzealous officer who should not have initiated a chase over a minor traffic infraction.

Lindsey and Mann sought damages under 42 U.S.C. § 1983, alleging violations of both their Fourth and Fourteenth Amendment rights by Officer Brandon Hyler, the City of Webbers Falls, and several other municipal officials, based on Officer Hyler's conduct during the pursuit as well as his previous training. Lindsey and Mann also sought relief under Oklahoma law.

The district court granted the defendants' motion for summary judgment on all federal claims and concluded that Officer Hyler was entitled to qualified immunity. We affirm. Because the record cannot credibly sustain plaintiffs' allegations, we conclude the district court appropriately dismissed their claims.

## I. Background

At the time of the incident, Kyle Lindsey was a 21-year-old operator of a small utility task vehicle (UTV), a four-wheeled vehicle used for light construction and recreation. It had a steering wheel, seating for two people, and a cargo area immediately behind both seats. Although the UTV was equipped with

seatbelts, it does not appear they were used. The manufacturer described the UTV as "an off-road vehicle not intended for use on public roads." R. 386–88. It warned purchasers that the UTV "is not designed for on-road safety." *Id*. The manufacturer also warned that "[a]brupt maneuvers or aggressive driving can cause rollovers or loss of control—even on flat ground—resulting in crushing or other injuries." *Id*.

One night in November 2015, Lindsey and his friend, Zayne Mann, were riding the UTV after spending the afternoon drinking beer on the outskirts of Webbers Falls, Oklahoma. Around 9:15 P.M., Lindsey exited the parking lot of a convenience store and turned onto a public access road. After witnessing the UTV roll through a stop sign, Officer Hyler initiated a traffic stop by turning on his emergency lights. Disregarding this cue, Lindsey proceeded onto a state highway. Officer Hyler then activated his siren.

Lindsey did not stop, but instead accelerated toward an overpass beyond which the highway transitioned from pavement to gravel. Traveling on the gravel section of the road, the UTV began to kick up a cloud of dust. Having momentarily lost sight of the UTV, Officer Hyler slowed his vehicle before continuing pursuit.

After driving along the gravel road for less than a mile, Officer Hyler came upon the UTV, which was rolled on its side near a bend in the road. Lindsey and

Mann were seriously injured, and later testified they did not recall the details of the accident. Both were cited for a variety of traffic and criminal violations, although these charges were later dismissed. They subsequently filed these constitutional claims against Officer Hyler.

## II. Analysis

Lindsey and Mann argue the district court erred in granting summary judgment. They contend questions of fact remain regarding their claims of excessive force and outrageous police conduct. We review *de novo* a district court's decision to grant a motion for summary judgment. *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005); *see also Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006) ("On appeal, we review the award of summary judgment based on qualified immunity *de novo*."). Summary judgment becomes appropriate when there exists no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In applying the summary-judgment standard, we view the evidence and draw inferences in the manner most favorable to the non-moving party. *Schutz*, 415 F.3d at 1132. But the non-moving party must nonetheless establish facts such that a reasonable jury could find in his favor. *Id*. Unsubstantiated allegations will not suffice. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).

In cases where, as here, defendants have asserted the affirmative defense of qualified immunity, plaintiffs must also satisfy a familiar two-part burden. *E.g., Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must not only demonstrate that the defendant violated a constitutional right, but also that the right was clearly established at the time of the violation.

### A. Constitutional Claims against Officer Hyler

Lindsey and Mann advance both a Fourth Amendment claim for excessive force and a Fourteenth Amendment claim for substantive due process against Officer Hyler. We find neither persuasive.

#### 1. Excessive Force

Lindsey and Mann first contend Officer Hyler violated their Fourth Amendment right to be free from excessive force by intentionally contacting the UTV with his police vehicle, which in turn caused the UTV to crash.

We treat claims of excessive force as "seizures" subject to the Fourth Amendment's objective requirement for "reasonableness." *Estate of Larsen* ex rel *Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A plaintiff must therefore begin by demonstrating he was "seized" by a government actor. *E.g., Holland* ex rel *Overdorff v. Harrington*, 268 F.3d 1179, 1187–88 (10th Cir. 2001). A "seizure" in this context is defined as "a governmental termination of freedom of movement

*through means intentionally applied*." *Estate of Larsen*, 511 F.3d at 1259 (citing

*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (emphasis in original)).

The "reasonableness" of a particular use of force must be judged from the

perspective of a reasonable officer at the scene, and not with perfect hindsight.

*Graham*, 490 U.S. at 396. The Fourth Amendment "does not require police to use

the least intrusive means in the course of a detention, only reasonable ones."

*Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting

*Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005)). In

*Graham*, the Supreme Court identified three considerations for evaluating whether

an application of force was reasonable: (1) the crime's severity; (2) the degree of

potential threat posed by the suspect to both the officer and the general public;

and (3) the suspect's efforts to resist or evade arrest. *See id.* at 894–96.

But the Supreme Court also instructs us that only an *intentional* effort to

stop a fleeing suspect through physical contact with a police vehicle will be

considered a seizure, subject to the Fourth Amendment's requirement for

"reasonableness." *See, e.g., Scott v. Harris*, 550 U.S. 372, 374 (2007) ("We

consider whether a law enforcement official can, consistent with the Fourth

Amendment, attempt to stop a fleeing motorist from continuing his public-

endangering flight by ramming the motorist's car from behind.").

By contrast, "no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him." *Lewis*, 523 U.S. at 844 (internal quotation marks omitted) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989)).

Lindsey and Mann allege that a seizure transpired as Officer Hyler "forced Lindsey off the road" and "his police cruiser contacted" the UTV. R. 49, ¶ 23. But the district court correctly concluded that Lindsey and Mann had not developed their allegation of contact between the police vehicle and the UTV with sufficient evidence to create a genuine issue of material fact as to contact.

To begin, neither Lindsey nor Mann claims to possess *any* recollection of the details of the accident. Officer Hyler, by contrast, testified that he came upon the scene of the accident only *after* the UTV had crashed. Moreover, Lindsey and Mann have presented *no* evidence of *actual* physical contact between the patrol vehicle and the UTV, let alone any *intentional* contact.

Lindsey and Mann suggest their expert's report says otherwise. But the expert opined only that the UTV suffered damage "consistent with" an impact from another vehicle, and he could not match this "damage" with corresponding damage to Officer Hyler's patrol vehicle. *Id.* at 480. Nor would he testify that Officer Hyler's patrol vehicle *had, in fact, struck the UTV at all*. In fact, he

conceded expressly his inability to say that any contact transpired *at all*, "[a]s of today, based on everything that I've seen." *Id.* at 479–80.[1]

By contrast, the expert retained by Officer Hyler stated flatly "there is no physical evidence of contact between Officer Hyler's Dodge Charger and Lindsey's UTV." *Id.* at 403. This expert further opined that the "UTV lost control and exited the roadway. This loss of control is attributed to excess speed while entering the curve of the road. Collision reports address pre-impact skid marks approaching the dirt embankment." *Id.*

The district court properly concluded this absence of evidence was fatal to any claim of excessive force, as the record could not sustain the threshold allegation of a seizure. The district court likewise observed that—even had Lindsey and Mann presented *any* evidence of contact—the outcome would prove

---

[1] This deposition exchange proves illustrative:

> "Q: What do you mean when you say consistent with an impact between the right of Hyler's white Dodge Charger and the Can-Am's rear right?
> A: That is consistent with what you would expect if that happened.
> Q: But you can't say it happened?
> A: Correct.
> Q: And you're not going to say it happened?
> A: Correct. Well, depending on the evidence that's developed or the testimony that's given. As of today, based on everything that I've seen, no, I can't say that."

identical because they presented no evidence of *intentional* contact beyond

unsupported allegations of police misconduct.

We accordingly affirm the judgment of the district court dismissing the

Fourth Amendment claim for excessive force.[2]

### 2. Substantive Due Process[3]

Lindsey and Mann also contend the district court erred in granting summary

judgment on their substantive-due-process claim. They argue Officer Hyler's

pursuit—when considered in light of the totality of the circumstances—amounts

to an abuse of government power so severe as to shock the judicial conscience.

Claims for "substantive due process" find their basis in the Fourteenth

Amendment's protections against arbitrary government power. *See, e.g., Browder*

---

[2] Lindsey and Mann also advance a second Fourth Amendment claim regarding a "warrantless blood draw." The district court refused to consider this argument because it was not asserted in the complaint and raised for the first time at the summary-judgment stage. Issues raised for the first time at the summary-judgment stage are properly considered as requests to amend the complaint, pursuant to Federal Rule of Civil Procedure 15. *See Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011). We have long maintained that "untimeliness alone is a sufficient reason to deny leave to amend when the party filing the motion has no adequate explanation for the delay." *Id*. (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)) (cleaned up). As Lindsey and Mann have declined to offer *any* explanation for this delay—let alone any *adequate* explanation—we see no reason to consider this argument.

[3] The appellees urge we deem this claim forfeited because Lindsey and Mann offer only "bare assertions and cursory arguments" in support of reversal. Aple. Br. 17. But Lindsey and Mann did articulate their claim—albeit cursorily and, ultimately, unpersuasively—in briefing. So, we consider and reject this claim on its merits.

*v. City of Albuquerque*, 787 F.3d 1076, 1078–80 (10th Cir. 2015).  A violation of substantive due process may arise in two ways—from (1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience.  *E.g., Dawson v. Bd. of Cty. Commr's of Jefferson Cty.*, 732 F. App'x 624, 634 (10th Cir. 2018) (Tymkovich, C.J., concurring), *cert. denied*, 2019 WL 113094, Jan. 7, 2019.  To succeed on such a claim, an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law.  *Browder*, 787 F.3d. at 1078.

Here, Lindsey and Mann challenge Officer Hyler's official conduct.  They claim both his decision to initiate the pursuit (for a minor traffic violation) as well as his actions during the pursuit together constitute an abuse of power that shocks the judicial conscience.  In evaluating cases of police action, the Supreme Court has directed that we consider whether the challenged conduct bears a "reasonable justification in the service of a legitimate governmental objective" or if instead it might be "characterized as arbitrary, or conscience[-]shocking." *Lewis*, 523 U.S. at 846, 847 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)).

This standard is exacting.  *See Browder*, 787 F.3d at 1080.  "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional

sense." *Onyx Props., LLC v. Bd. of Cty. Commr's*, 838 F.3d 1039, 1048–49 (10th Cir. 2016) (quoting *Lewis*, 523 U.S. at 846). Indeed, not even "[i]ntentionally or recklessly causing injury through the abuse or misuse of government power is []enough." *Id*. at 1049.

Challenged actions "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience[-]shocking." *Id*. (internal quotation marks omitted). And the Supreme Court has observed expressly that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. at 854.[4]

Here, Officer Hyler confronted a not-unfamiliar scenario—"an unexplained flight from an attempted traffic stop." *See Graves v. Thomas*, 450 F.3d 1215, 1223 (10th Cir. 2006). In *Graves*, we contemplated—and ultimately rejected—a due-process claim arising from a fatal accident that occurred during the course of a high-speed pursuit. *Id*. at 1222–23. We concluded the plaintiff "supplied, in spades, a legitimate object of arrest and the record fails to legitimately suggest an intent . . . to cause harm unrelated to the arrest." *Id*. at 1223.

---

[4] The same standard applies to low-speed pursuits. *Cf. Perez v. Unified Gov't of Wyandotte Cty./Kansas City*, 432 F.3d 1163, 1167 (10th Cir. 2005).

Similarly, the undisputed facts of this case admit of no reasonable inference that Officer Hyler intended any harm to Lindsey or Mann. Nor did Officer Hyler act with deliberate indifference to their substantive rights. Rather—as the district court observed—Officer Hyler reacted reasonably to multiple traffic violations, as well as Lindsey's attempt to elude police authority.

We accordingly affirm the judgment of the district court dismissing the Fourteenth Amendment claim for substantive due process.

### B. Qualified Immunity

When a defendant asserts qualified immunity as a defense at the summary-judgment stage, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time the violation transpired. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)).

Because Lindsey and Mann have failed to demonstrate that Officer Hyler violated a constitutional right—let alone a constitutional right that was "clearly established" at the time of these events—Officer Hyler is entitled to qualified immunity. Accordingly, we affirm the judgment of the district court in granting summary judgement to Officer Hyler.

## C. *Municipal Liability*

Finally, Lindsey and Mann contend the district court erred in granting summary judgment on their claims against the City of Webbers Falls. They claim Officer Hyler was not properly trained, and that his lack of appropriate training contributed to the accident.

A § 1983 lawsuit against a municipality on account of the actions of its police officers requires proof that (1) an officer committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred. *Estate of Larsen*, 511 F.3d at 1264 (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)).

But "[a] municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights." *Livsey v. Salt Lake Cty.*, 275 F.3d 952, 958 (10th Cir. 2001) (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001)).

Here, the district court properly concluded that the municipal-liability claims were foreclosed. Because Lindsey and Mann failed to establish a constitutional violation, no liability can attach to the City. *See id.* at 958. Accordingly, we affirm the judgment of the district court dismissing the municipal-liability claims.

## III. Conclusion

Because Lindsey and Mann have failed to establish any violation of their constitutional rights, we AFFIRM in its entirety the district court's decision granting summary judgment.