**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WAYNE DEAN WIEBER,

    Plaintiff - Appellant,

v.

MATTHEW PORTER; DANIEL HYDE;
JAMES L. BARRON; JOSEPH HARVEY;
WILLIAM KILPATRICK; CITY OF
GOLDEN, COLORADO,

    Defendants - Appellees.

No. 23-1158
(D.C. No. 1:18-CV-02540-DDD-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Plaintiff-Appellant Wayne Dean Wieber appeals the district court's grant of

summary judgment against him on 42 U.S.C. § 1983 claims he asserted against

individual Defendants flowing from his warrantless arrest for witness retaliation and

the subsequent search and seizure of his cell phone pursuant to a warrant. The district

court concluded that Mr. Wieber had not met either prong of his two-part burden to

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

defeat Defendants' assertion of qualified immunity at summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Over the course of more than ten years, disputes between Mr. Wieber and his neighbors generated so many calls to the City of Golden Police Department that in October 2016, the department promulgated a policy to govern its response to complaints from the neighborhood. The department articulated the contours of this policy in an email to the entire police department, with Mr. Wieber copied, explaining that the department had reached a "pivotal point with everyone in the neighborhood that has [led] us to a zero tolerance for anything criminal taking place (If a crime has been committed, charges will be filed)." App. Vol. II at 374.

The police department then sent a letter detailing the policy to Mr. Wieber and his neighbors. The letter explained that, given "the complex dynamics and years of history in the neighborhood," future complaints would be handled by two named police officers—one of whom was Defendant Sergeant Matthew Porter—so that the neighborhood could be assured that the responding officers are "fully aware of the neighborhood dynamics [in] com[ing] to a determination of how to proceed in the individual reports." App. Vol. I at 172–73. The letter further explained that under this new policy, "[w]here a crime has been identified, there will no longer be discretion in pursuing criminal charges. Charges will be filed individually or jointly and may be accompanied by a physical arrest and transport to the Jefferson County Jail." *Id.* at 173.

Less than three weeks after the policy letter was sent, two of Mr. Wieber's neighbors submitted written complaints to the police department alleging as follows: Apparently upset that Mr. Wieber and his wife were "constantly" filming children playing in the front yard of the home across the street from the Wiebers, a coalition of their neighbors coordinated to have Dan Reasoner park his large electrician's truck directly in front of the home across the street from the Wiebers to block their ability to film the children. *Id.* at 202. In response, Mr. Wieber contacted Mr. Reasoner's employer, McBride Lighting and Electrical, to falsely inform the company that Mr. Reasoner was improperly allowing children to play on the truck. As a result of Mr. Wieber's reports to Mr. Reasoner's employer, the employer forbade Mr. Reasoner from bringing his work truck home at night.

In investigating these complaints, Sgt. Porter noted that one of the complainants was Amber Wilson, Mr. Reasoner's wife and the daughter of the homeowner where the truck had been parked to block Mr. Wieber's ability to film. Sgt. Porter further noted that Ms. Wilson was the sister of another neighbor, Skyler Swanson-Espinosa, who "was a witness (and defendant) in a pending menacing case in which Mr. Wieber was the alleged victim." App Vol. II at 375.

Sgt. Porter then spoke with Mr. Wieber, who told Sgt. Porter that "he has had a lot of things happen over the years in the neighborhood and he wanted to 'get back' at the Swanson family for everything that has happened." *Id.* Sgt. Porter also spoke with Mr. Reasoner's employer, "who confirmed that Mr. Wieber had twice come in to show alleged misuse of the company truck, and also explained some of the

3

neighborhood dispute." *Id.* Sgt. Porter further spoke with Mr. Reasoner and Ms. Wilson, who told Sgt. Porter they were concerned about Mr. Wieber's interference with Mr. Reasoner's employment "because they thought they might be called to testify in the menacing case involving [Messrs.] Wieber and Swanson-Espinosa." *Id.*

With these facts known to Sgt. Porter, he again interviewed Mr. Wieber. In that interview—conducted at the police station—Mr. Wieber admitted that he had gone to Mr. Reasoner's employer to report alleged misuse of the truck along with other grievances about Mr. Reasoner's extended family. Mr. Wieber did not deny that he had previously told Sgt. Porter that he spoke with Mr. Reasoner's employer to "get back" at the family, but he claimed that Sgt. Porter had misunderstood what he meant, though he offered no cogent explanation of his actual intent. At that point, Sgt. Porter believed there was probable cause to believe that Mr. Wieber had committed retaliation against a witness in violation of Colorado Revised Statute § 18-8-706(1). He thus arrested Mr. Wieber and seized a tape recorder Mr. Wieber had been using to surreptitiously record the interview along with Mr. Wieber's cell phone. Sgt. Porter believed the cell phone "would contain footage of the original confrontation between [Mr. Wieber] and Mr. Swanson-Espinosa," which formed the basis of the pending menacing case involving Messrs. Wieber and Swanson-Espinosa.[1] *Id.* at 376.

---

[1] Mr. Wieber told Sgt. Porter that the recording was made using his spouse's phone because Mr. Wieber was "so fearful [during the alleged menacing event] that

Officer James L. Barron subsequently drafted an application for a warrant to search Mr. Wieber's cell phone. The warrant described the things to be seized on Mr. Wieber's phone as follows:

> Telephone numbers, names, addresses, dates, appointments, emails, email addresses, opened and unopened voice-mail messages and text messages, photographs, video, notations, and "telephone book" or contact information listing frequently called numbers, and all other unidentified electronic communications/information stored in the cellular phones (sic) memory which will aid in the furtherance of this investigation.

*Id.* at 269. The warrant itself made no attempt to identify or describe the "investigation" to which the search was directed. Officer Barron's affidavit in

---

he lost control of his cellular phone and it landed on the floor board of the vehicle." App. Vol. II at 270. Sgt. Porter and Officer Barron apparently doubted the veracity of that statement, seemingly because Mr. Wieber's description of the alleged menacing event was at odds with the substance of the video, and further because of the unclear provenance of the recording Mr. Wieber ultimately provided to Sgt. Porter. Specifically, Mr. Wieber told Sgt. Porter that the video of the event—recorded in the first instance with his wife's cell phone—was on an SD card that he had "misplaced." *Id.* When Mr. Wieber located and presented Sgt. Porter with the SD card, Mr. Wieber acknowledged and "apologized for the poor quality of the video," which he said was made "via a video recording of the video recording." *Id.*

Notwithstanding its poor quality, Sgt. Porter's review of the video called Mr. Wieber's description of the event and his explanation of the provenance of the recording into doubt. First, the video revealed that contemporaneous with the recording, Mr. Wieber's spouse was on another phone falsely informing police that she and Mr. Wieber were "driving away" from Mr. Swanson-Espinosa. *Id.* ("[H]owever the car was stationary and [Mr.] Wieber was heard in conversation with [Mr.] Swanson-Espinosa during the contact."). Second, the video raised "definite questions as to the level that [Mr.] Wieber was scared during the contact." *Id.* at 270–71. In light of these inconsistencies regarding the alleged menacing itself and the creation of the video thereof, Sgt. Porter and Officer Barron entertained doubts about Mr. Wieber's veracity, and they suspected that the original recording was in fact on Mr. Wieber's phone. *See id.* at 258 (Sgt. Porter's narrative) ("[Mr.] Wieber stated that he had to tape the footage from a secondary device and put it on the SD card. It should be noted that the footage was believed to have come from [Mr.] Wieber's cell phone . . . .").

5

support of the warrant—which was not expressly incorporated by reference in the warrant itself—alluded to two distinct investigations to support the issuance of the warrant: the investigation surrounding Mr. Wieber's charge for witness retaliation, and the investigation surrounding Mr. Swanson-Espinosa's menacing charge in which Mr. Wieber was the alleged victim. But the affidavit's ultimate articulation of the proposed search was not limited to those pending charges, and instead sought "[a]ny and all media files related to neighborhood disputes and disturbances involving Mr. Wieber and other members of the community." *Id.* at 271.

Officer Barron's supervisor approved the warrant and supporting affidavit, and a neutral magistrate judge subsequently issued it. Officer Barron thus searched the phone, and it was returned to Mr. Wieber only after the district attorney voluntarily dismissed Mr. Wieber's case "on the grounds [that] it lacks elements of the crime." *Id.* at 302.

In October 2018, Mr. Wieber initiated this action, asserting four § 1983 claims against five individual Defendants and the City of Golden, Colorado (the "City") under a *Monell* theory.[2] After Defendants' partially successful motion to dismiss, the following claims remained: (1) a Fourth Amendment unlawful arrest claim asserted

---

[2] Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and subsequent Supreme Court precedent addressing that decision, a municipality may be held liable under § 1983 only if the plaintiff's alleged constitutional injury was caused by an official policy or custom that was instituted or maintained with deliberate indifference to its known or obvious consequences. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

against Sgt. Porter and the City, (2) a First Amendment retaliatory arrest claim asserted against Sgt. Porter and the City, (3) a Fourth Amendment claim for unlawful search and seizure of Mr. Wieber's cellphone against Officer Barron and the City, and (4) a First Amendment retaliatory seizure claim against Sgt. Porter, Officer Barron, and the City.

In September 2020, the remaining Defendants (i.e., Sgt. Porter, Officer Barron, and the City) moved for summary judgment on all claims.[3] The individual Defendants asserted qualified immunity as a defense to all claims. As relevant to this appeal, on the unlawful arrest Fourth Amendment claim, Sgt. Porter—the only individual Defendant sued thereunder—argued that Mr. Wieber's warrantless arrest was supported by probable cause, presenting an absolute bar to that claim. With respect to the Fourth Amendment search claim, Officer Barron—the only individual Defendant sued thereunder—pointed to the existence of the warrant for the search of Mr. Wieber's cell phone and the legal proposition that a judicial officer's issuance of such a warrant is "the clearest indication" the officer acted to obtain the warrant "in an objectively reasonable manner." Finally, the City sought summary judgment on grounds that there existed no policy on which any *Monell* claim could be premised.

In opposing summary judgment on the warrantless arrest claim, Mr. Wieber argued that Sgt. Porter bore the burden to establish the existence of probable cause

---

[3] Also in September 2020, Mr. Wieber moved for partial summary judgment as to Defendants' liability.

for the warrantless arrest and that, stripped of the "bare bones legal conclusions [on which he purported to rely,] . . . it is clear that there was no probable cause to arrest [Mr. Wieber]." App. Vol. II at 330. Mr. Wieber appeared to argue that Sgt. Porter should have conducted additional factual and legal inquiries regarding the alleged crime, the absence of which vitiated probable cause for the arrest.

As to the Fourth Amendment search claim, Mr. Wieber argued that the warrant was "a general warrant" in violation of the Fourth Amendment's requirement that search warrants be particularized, and that "no reasonable officer could [have] believed it to be valid." *Id.* at 336. Mr. Wieber made no attempt to support his *Monell* claims against the City.

In March 2023, the district court granted Defendants' motion for summary judgment in full. The district court first determined that Mr. Wieber's failure to respond to several summary judgment grounds advanced by Defendants meant that he had "conceded . . . the First Amendment retaliation claims (Claims 2 and 4) and all claims against the City."[4] *Id.* at 381.

Next, the district court concluded that Mr. Wieber had wholly failed to carry his qualified immunity burden to show that any constitutional violation was clearly established, "which is sufficient reason to grant Defendants' motion." *Id.* at 383; *see id.* at 382 (noting that Mr. Wieber's qualified immunity briefing on the search claim

---

[4] Mr. Wieber does not appeal this disposition of the First Amendment and *Monell* claims.

did no more than "point[] to general propositions about protections from unjustified searches and seizures," which cannot satisfy the clearly established prong).

But having identified this dispositive deficiency, the district court went on to analyze—seemingly in the alternative—whether Mr. Wieber had satisfied the merits prong of qualified immunity. With respect to the warrantless arrest claim, the district court concluded that Mr. Wieber's arrest was supported by probable cause "for a charge of retaliation against a witness." *Id.* at 384–85. The district court analyzed the elements of that charge and concluded that the undisputed facts "provide significantly more than mere suspicion that Mr. Wieber's motivation [in making the reports to Mr. Reasoner's employer] was either retribution or retaliation against a witness and his family and were enough to justify Sergeant Porter's decision to arrest Mr. Wieber." *Id.* at 386.

With respect to the Fourth Amendment cell phone search claim, the district court rejected Mr. Wieber's assertion that the search warrant was insufficiently particularized, concluding that "Officer Barron's Affidavit in Support of Search Warrant provided detailed information regarding both the ongoing neighborhood dispute and the retaliation against a witness case." *Id.* at 387. "The undisputed evidence shows," the district court concluded, "that the warrant application was not falsified, the warrant was properly issued, and the search was conducted consistent with the warrant." *Id.* at 388.

9

Having concluded that Mr. Wieber could not survive summary judgment for his failure to establish either prong of qualified immunity, the district court denied Mr. Wieber's motion for partial summary judgment as moot.

## II.    DISCUSSION

"We review *de novo* a district court's decision to grant a motion for summary judgment." *Lindsey v. Hyler*, 918 F.3d 1109, 1113 (10th Cir. 2019). "Summary judgment becomes appropriate when there exists no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). By protecting "all but the plainly incompetent or those who knowingly violate the law," qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

A § 1983 defendant's assertion of qualified immunity "creates a presumption that [the defendant is] immune from suit." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). "To overcome this presumption," the plaintiff "must show that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation . . . ." *Id.* (quoting *Mullenix*, 577 U.S. at 11).

10

The touchstone of the clearly established analysis is whether the right allegedly violated "is one that is 'sufficiently clear [so] that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To establish the clarity of the right, plaintiffs must ordinarily adduce an on point Supreme Court or Tenth Circuit precedent, or show that "the alleged right is clearly established from case law in other circuits." *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022) (quotation marks omitted). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). And courts must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"However, the qualified immunity analysis involves more than a scavenger hunt for prior cases with precisely the same facts," *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016) (quotation marks omitted), and so "a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law," *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018); *see also Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) ("The plaintiff is not required to show . . . that the very act in question previously was held unlawful . . . ."). Rather, "'[t]he salient question . . . is whether the state of the law' at the time of an incident

11

provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (second alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). At bottom, "[w]e must scrupulously adhere to our longstanding duty to ascertain clear law (clear answers) that would apply to the situation at hand." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotation marks omitted).

Finally, a "defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong," *Valdez v. Macdonald*, 66 F.4th 796, 831 (10th Cir. 2023), and we have discretion regarding "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson*, 555 U.S. at 236.

Here, we resolve the warrantless arrest claim solely on Mr. Wieber's failure to meet prong two of qualified immunity—clearly established law. But with respect to the unlawful search claim we examine both prongs of qualified immunity, ultimately concluding that while Mr. Wieber has established a constitutional violation at prong one of qualified immunity, his claim fails at prong two because he has not established that every reasonable officer would have known the warrant was overbroad.

### A.    The warrantless arrest claim

"A warrantless arrest is permissible when an officer has probable cause to believe that a person committed a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks omitted). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a

person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quotation marks omitted).

Probable cause does not "require the suspect's guilt to be 'more likely true than false.'" *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Id.* (internal quotation marks omitted).

Finally, where, as here, a defendant asserts qualified immunity to defeat § 1983 claims based on a warrantless arrest, a plaintiff must show not only that probable cause was lacking, thereby resulting in a constitutional violation, but also that the violation was clearly established. To be clearly established, it is not enough that probable cause was absent, there must not exist even "arguable probable cause"—that is, the arresting officer's "belief that he possessed probable cause [must be] not only mistaken, it [must be] objectively unreasonable." *A.M. v. Holmes*, 830 F.3d 1123, 1147 (10th Cir. 2016).

As explained below, Mr. Wieber's showing on clearly established law with respect to his warrantless arrest claim at summary judgment was so obviously deficient that we exercise our discretion to proceed directly to that prong, assuming without deciding that Sgt. Porter violated the Fourth Amendment by arresting Mr. Wieber without a warrant.

13

In attempting to meet the clearly established prong to defeat Sgt. Porter's qualified immunity, Mr. Wieber relied exclusively on *Watts v. United States*, 394 U.S. 705, 707–08 (1969), in which the Supreme Court held that the First Amendment precluded a criminal defendant's conviction for threating to kill the President where the defendant's conduct amounted to nothing more than "a kind of very crude offensive method of stating a political opposition to the President." Mr. Wieber did not discuss the contours of the case at all, instead excerpting its language establishing that statutes criminalizing speech "must be interpreted with the commands of the First Amendment clearly in mind," and that a criminal "threat must be distinguished from [] constitutionally protected speech." App. Vol. II at 329 (quoting *Watts*, 394 U.S. at 707). But beyond articulating these broad principles from *Watts*, Mr. Wieber made no attempt to explain how that case adequately alerted any reasonable officer that the warrantless arrest here was unlawful. Instead, Mr. Wieber advanced a conclusory statement—resting on a yawning and unsupportable analytical leap—that *Watts* "clearly established that [he] could not be criminally charged for truthfully commenting to his neighbor's employer on his neighbor's activities in the public view." *Id.*

Like the district court, we cannot see how Mr. Wieber's recitation of highly generalized First Amendment principles from *Watts* suffices to establish that all but the most incompetent officers would have known that they were violating the Fourth Amendment by arresting Mr. Wieber for witness retaliation in these circumstances. *See Mullenix*, 577 U.S. at 14 (explaining that "[t]he general principle that deadly

14

force requires a sufficient threat hardly settles" whether existing precedent established, beyond debate, that § 1983 defendant's conduct "in these circumstances" was unreasonable); *see* App. Vol. II at 382 (concluding Mr. Wieber's clearly established showing at summary judgment was deficient because "the clarity of the law must be viewed 'in light of the specific context of the case, not as a broad general proposition'" (quoting *Pauly v. White*, 874 F.3d 1197, 1222 (10th Cir. 2017))). Mr. Wieber did not cite a single case that relates to the question of whether a police officer violates the Fourth Amendment by effecting a warrantless arrest for witness retaliation or a roughly comparable criminal offense under any facts—much less sufficiently analogous facts—and the district court permissibly found this deficiency dispositive. *See Cummings v. Dean*, 913 F.3d 1227, 1243 (10th Cir. 2019) (holding that plaintiffs' clearly established showing was deficient for failure to "identif[y] any case from the Supreme Court or this court finding a defendant liable under federal law in factually similar circumstances").

On appeal, Mr. Wieber makes no attempt to defend the sufficiency of his clearly established showing on the warrantless arrest claim, instead raising a host of arguments and authorities that were never presented to the district court. *See, e.g.*, Appellant's Br. at 5 (faulting the district court for failing to reference "published controlling rulings" of the Colorado Supreme Court[5] that Mr. Wieber omitted from

---

[5] While Mr. Wieber has not gestured to our decisions in this area, our precedent instructs that in certain circumstances, state law—including state court constructions of state law—appropriately informs the probable cause analysis for purposes of determining whether federal constitutional rights have been violated. *See,*

his submissions to the district court). Mr. Wieber's failure to present these arguments and authorities to the district court renders them forfeited, and his failure to seek plain error review on appeal means they are effectively waived. *See Fish v. Kobach*, 840 F.3d 710, 729–30 (10th Cir. 2016) (deeming argument forfeited for failure to present it to the district court and "effectively waived" on appeal for failure to seek plain error review).

To clarify, we express no opinion on whether Sgt. Porter's conduct actually violated the Fourth Amendment, or whether a more apt marshaling of the relevant law than that advanced by Mr. Wieber would lead us to conclude arguable probable cause was lacking such that any constitutional violation was clearly established. Rather, we hold only that Mr. Wieber did not meet his burden to defeat Sgt. Porter's qualified immunity under the clearly established prong by pointing to the general proposition that criminal statutes punishing speech must be applied narrowly to comply with the First Amendment.

### B.     *The unlawful search warrant claim*

Mr. Wieber's briefing both before the district court and on appeal consists largely of serial block quotes with very little discussion of the excerpted authorities or application of those cases to the claims in this action. Faced with this kind of

---

*e.g., A.M. v. Holmes*, 830 F.3d 1123, 1140–41 (10th Cir. 2016) ("[W]e underscore that—even when it is essential to discern the content of state law—the rights being vindicated through § 1983 are federal."). We express no view on whether an appropriately supported argument under this framework would have been availing, since Mr. Wieber has both forfeited and waived his reliance on these newly cited authorities.

advocacy, the district court justifiably faulted Mr. Wieber for neglecting to advance an organized, fulsome argument that any constitutional defect in the search warrant was clearly established. *See* App. Vol. II at 382–83 ("Mr. Wieber has not met his burden to explain the clearly established law here . . . .").[6]

With respect to his search warrant claim, however, we read his summary judgment brief generously to conclude it advanced a sufficiently understandable argument that the warrant both could not withstand Fourth Amendment scrutiny and that existing precedent clearly established its defects. In large part, Mr. Wieber's ability to make a more meaningful showing on his search warrant claim—as compared to his plainly deficient showing on the warrantless arrest claim—was enabled by the relative simplicity and precedential clarity of the relevant right: the right to be free from a search pursuant to a warrant that authorizes a general, unparticularized search of one's property.

Specifically, Mr. Wieber argued that the warrant, on its face, authorized a broad search of his entire cell phone, and further that the warrant contained no

---

[6] Mr. Wieber apparently believed he had *no* obligation to defeat qualified immunity, wrongly asserting that as to the warrantless arrest claim, Sgt. Porter bore the "burden to establish that the warrantless arrest of [Mr. Wieber] was supported by probable cause." App. Vol. II at 330. But our precedent consistently and clearly holds that when a defendant asserts qualified immunity, the burden to establish both prongs shifts to the plaintiff. As the district court explained: "Contrary to [Mr. Wieber's] response, once 'a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff,' who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct." App. Vol. II at 382 (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)).

language limiting its scope to the search and seizure of evidence of a specific, suspected crime. And Mr. Wieber pointed to multiple authorities that, he posited, sufficed to put a reasonable officer on notice that the warrant was invalid. Although Mr. Wieber's briefing engendered confusion by combining the merits prong and the clearly established prong of qualified immunity, we are satisfied that he did enough to preserve his appellate contentions as to his unlawful search claim. We thus proceed to analyze both prongs of qualified immunity under this claim and conclude that while the warrant indeed ran afoul of the Fourth Amendment, its defects in these circumstances were not so plain that we can say any reasonable officer would have discerned them.

**1.    Whether the warrant violated the Fourth Amendment**

"In protecting against unreasonable searches and seizures, the Fourth Amendment mandates two requirements for search warrants: a warrant must be supported by probable cause, and it must describe with particularity 'the place to be searched, and the persons or things to be seized.'" *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017) (quoting U.S. Const. amend. IV). Probable cause for the issuance of a search warrant means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) (quotation marks omitted). "The manifest purpose of th[e] particularity requirement was to prevent general searches," ensuring that a search "will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The

particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). As applied to search warrants for electronic devices, our precedent demands that warrants "affirmatively limit the search to evidence of specific [] crimes or specific types of material." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).

The warrant here did not effectively cabin its scope to evidence of a specific crime. Recall that the warrant authorized a search of the cell phone for:

> Telephone numbers, names, addresses, dates, appointments, emails, email addresses, opened and unopened voice-mail messages and text messages, photographs, video, notations, and "telephone book" or contact information listing frequently called numbers, and all other unidentified electronic communications/information stored in the cellular phones (sic) memory which will aid in the furtherance of this investigation.

App. Vol. II at 269. The warrant broadly authorized the search and seizure of any material that would "aid in the furtherance of this investigation," but the warrant— exclusive of the supporting affidavit—does not define "this investigation." Thus, particularly in light of the decade of disputes among these neighbors, it authorized an impermissible general search, untethered to any timeline, types of evidence sought, or particular crime. App. Vol. II at 269. That is, the warrant authorized "precisely the kind of 'wide-ranging exploratory search[] that the Framers intended to prohibit.'" *Riccardi*, 405 F.3d at 863 (alteration in original) (quoting *Garrison*, 480 U.S. at 84).

In some circumstances, an otherwise unparticularized warrant can be cured when it incorporates by reference other documents, such as the supporting affidavit,

19

that impose sufficiently particularized limitations on the search. *See Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004). But the warrant here did not effectively incorporate the supporting affidavit by reference; while the warrant noted that an affidavit had been filed in support of the warrant, it did not expressly incorporate the affidavit into the warrant's description of the items to be searched and seized. *See id.* at 554–55 (implying that warrant that merely referenced the existence of an affidavit did not effectively incorporate the affidavit by reference). The supporting affidavit thus may not be consulted for purposes of ascertaining compliance with the particularity requirement under the merits prong of qualified immunity. Accordingly, the warrant violated Mr. Wieber's Fourth Amendment rights, thereby satisfying the first prong necessary to defeat Officer Barron's qualified immunity defense.

## 2.     Whether the warrant's defects were clearly established

Having concluded the warrant was constitutionally defective, we must further determine whether the violation was clearly established—that is, whether existing precedent "'placed the . . . constitutional question' confronted by [Officer Barron] 'beyond debate.'" *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *al-Kidd*, 563 U.S. at 741). Stated differently, our inquiry centers on the "objective legal reasonableness" of Officer Barron's conduct as "assessed in light of the legal rules that were 'clearly established' at the time" of his conduct. *Messerschmidt*, 565 U.S. at 546 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the

20

clearest indication that the officers acted in an objectively reasonable manner or, as [the Supreme Court has] sometimes put it, in 'objective good faith.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). But the Court has "recognized an exception allowing suit [even where a magistrate judge issued a warrant] when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Court has cautioned, however, "that the threshold for establishing this exception is a high one." *Id.* at 547; *see United States v. Knox*, 883 F.3d 1262, 1274 (10th Cir. 2018) (noting that the Supreme Court "has recently admonished that" a "high standard" must be met before establishing the exception). This "narrow exception" presents a high bar because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Messerschmidt*, 565 U.S. at 547 (quoting *Leon*, 468 U.S. at 921). To obtain personal liability in these circumstances, the plaintiff must establish that "the Magistrate['s] [issuance of the warrant was] so obviously err[oneous] that any reasonable officer would have recognized the error." *Id.* at 1250. "The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." *Id.*

The decision in *Groh* provides a useful illustration of a warrant whose defects are so obvious that no reasonably competent officer would have concluded it should

21

issue. There, "in the space set aside [in a form warrant] for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color.'" *Groh*, 540 U.S. at 558. "In other words, the warrant did not describe the items to be seized *at all*." *Id.* The Court reasoned that "even a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564.

The warrant in this case, however, is a far cry from the obviously and facially deficient warrant in *Groh*—specifically, the particularity defect in the warrant here is not of the type "that 'just a simple glance' would have revealed." *Messerschmidt*, 565 U.S. at 556 (quoting *Groh*, 540 U.S. at 564). Rather, the warrant contains substantially more specificity than a mere description of Mr. Wieber's cell phone, instead listing in detail the types of information appropriately searched. And we cannot say that all but the plainly incompetent would have, upon reviewing the affidavit and warrant in tandem, both homed in on the warrant's imperfect incorporation of the affidavit *and* thereby concluded that the cabining language— "this investigation"—did not adequately constrain the warrant's scope. Further, Officer Barron submitted the warrant and supporting affidavit to his supervisor, who reviewed and approved them. To hold that Officer Barron's conduct was not objectively reasonable "would mean not only that [he] w[as] 'plainly incompetent,' but that [his] supervisor . . . and the Magistrate were as well." *Id.* at 554 (quoting *Malley*, 475 U.S. at 341). That neither his supervisor nor the magistrate judge who

issued the warrant "expressed concern about its validity demonstrates that any error was not obvious." *Id.* at 556.

In short, we cannot say that our conclusion on the merits of Mr. Wieber's unlawful search claim—that the warrant was not adequately particularized—was so glaringly apparent that it falls within the "narrow exception" to the rule that a neutral magistrate judge's issuance of the warrant is "the clearest indication" that an officer acted objectively reasonably. *Id.* at 547–48. Officer Barron is therefore entitled to qualified immunity, and we thus affirm the summary judgment entered in his favor.

### III.   CONCLUSION

For the reasons articulated, we AFFIRM the judgment of the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge